UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| SUSAN ALFORD BRUCE | CIVIL ACTION NO. 07-0480 |
| VS. | JUDGE HAIK |
| LCS CORRECTIONS SERVICES, INC. MICHAEL STRIEDEL | MAGISTRATE JUDGE METHVIN |

*REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT*
(Rec. Doc. 38)

Susan Alford Bruce filed this civil rights complaint on March 5, 2007. The only remaining claim is Bruce's allegation that she was the victim of excessive force during an incident that occurred on April 21, 2006.[1] The excessive force claim is lodged against Louisiana Corrections Services, Inc. (LCS) and Michael Striedel.

Before the court is defendants' Motion for Summary Judgment seeking dismissal of the excessive force claim. Plaintiff opposes the motion.[2] For the following reasons, it is recommended that defendants' motion be denied.

*Contentions of the Parties*

*Plaintiff contends as follows:* Plaintiff is an inmate in the custody of the Alabama Department of Corrections (ADOC). She is currently incarcerated at the Julia Tutwiler Prison for Women (JTPW), Wetumpka, Alabama. Her constitutional rights were violated while she was

---

[1] On July 6, 2007, the undersigned issued a report recommending that all of Bruce's claims except Claim 10 regarding excessive force, be denied and dismissed. Rec. Doc. 11. On September 11, 2007, Judge Haik adopted the undersigned recommendation and denied and dismissed with prejudice claims 1-9 and 11-19. Rec. Doc. 18.

[2] Rec. Doc. 43.

incarcerated at the South Louisiana Corrections Center (SLCC) in Basile, Louisiana from December 1, 2003 to July 25, 2006. On April 21, 2006, Major Michael Striedel used excessive force on her causing injury to her right wrist and bruises on her legs. Striedel's use of force occurred after he discovered that plaintiff had made a telephone call to LCS's Lafayette Office, which angered him. Plaintiff states:

> On April 21, 2006, Petitioner ... placed a telephone call to the business office of Mr. LeBlanc/SLCC. Petitioner was concerned about the unit she is housed in did not have a microwave in the dorm. She asked if there was any way that they could assist them in getting one to replace the one that had torn up the week before ... Shortly after the Petitioner spoke to someone at the Lafayette office the entire dorm was placed on their bunks. Minutes later, Major Stridel, the head of security, came into the dorm in a fit of rage. He was using profanity when he inquired who had called the Lafayette office. The petitioner raised her hand and said that she was the one who had made the call. Major Stridel was again using profanity when he told the Petitioner to get down from her top bunk and to report to the front of the dorm. While the petitioner was trying to get her shoes on, Major Stridel charged toward the Petitioner and was so angry at this point that he had to catch himself from grabbing the Petitioner but instead bumped into her causing the Petitioner to lose her balance and stagger into her bed. She regained her balance and began walking toward the front of the dorm. Major Stridel had a strong hold on the back of her arm, shoving the Petitioner toward the front ... where Lt. Head, Sgt. Acevedo, Mrs. Pullard, and Capt. Ryder waited. Major Stridel then gave orders for Lt. Head to lock the Petitioner up, using profanity once again. The Petitioner placed her hands behind her back and Lt. Head proceeded to handcuff the Petitioner. Major Stridel then snatched the handcuffs from Lt. Head's hands and roughly handcuffed the Petitioner himself...[3]

Bruce's affidavit adds, "At this point with the look on Major Stridel's face, his yelling at me, Susan Bruce, the charging toward me and knocking me into my bed, I did not dare speak a single word. I did not question him, I did not make any sudden moves, nor did I resist in any way."[4] Bruce describes the handcuffing episode as, "Major Stridel hit my wrist hard with both

---

[3] Rec. Doc. 7 pps. 4-7.

[4] Attachment to Rec. Doc. 43.

cuffs and squeezed them as tight as they would go. I, Susan Bruce, still did not move, say a word, nor did I offer any type of resistance."[5]

In support of her allegations, plaintiff submitted the affidavit of Jackie Simmons who witnessed the incident.[6] Ms. Simmons stated that Major Streidel entered their dorm using profanity and asking who had placed the call to the Lafayette office. When Bruce raised her hand, Major Streidel told Lt. Crystal Head to lock-up Bruce. While Bruce was putting on her shoes, "Major Striedel flew to the back of the dorm in a rage, bumping Susan while she was still bent over..."[7] Ms. Simmons also stated that Major Streidel "snatched" the handcuffs from Lt. Head and put them on Bruce.

The record also contains the affidavit of Tracy Cohen, who also witnessed the incident. Ms. Cohen states that Bruce told Major Streidel that the handcuffs were too tight and that Ms. Cohen could "see madness all over Major Striedel's face."[8] The affidavit of Melanie Lowery states that she saw Bruce after she got out of lockdown and Bruce had a big knot and dark bruises on her wrist.

On May 8, 2006, Bruce was examined by the LCS nurse for complaints of wrist pain.[9] On May 10, 2006, Bruce again complained of wrist pain and was prescribed Flexeril for pain relief. On August 18, 2006, Bruce was still experiencing pain and the LCS medical notes show that her

[5] Id.

[6] Attachment to Rec. Doc. 43.

[7] Attachment to Rec. Doc. 43.

[8] Id.

[9] Rec. Doc. 38, Exhibit 1, p. 123.

right wrist was swollen.[10] Bruce continued treatment for wrist pain, including steroid injections.

On August 10, 2007, Bruce underwent dorsal compartment release and extension tendon release surgery.[11]

*Defendants contend:* Major Striedel's affidavit describes the incident as follows:

> I do recall the incident of April 21, 2006 involving Susan Alford Bruce and remember that the entire incident lasted approximately 30 seconds. I handcuffed Susan Bruce and walked her 10 to 12 feet to the dorm door and handed her over to Lt. Head with orders to put her in lockdown due to violation of prison regulations. I did handcuff Susan Bruce with hand restraints. My treatment of Susuan Bruce in handcuffing her and turning her over to Lt. Head was done in a normal and expeditious fashion. I used no excessive force and handled her normally as per LCS regulations. I did not push or shove her at all. I noted that when I handcuffed her it was done in a normal fashion and caused no obvious injury, bruising, or cuts with no visible deformity or injury to any part of her body. She never fell down nor was she ever struck by me or any other item. I used no profanity in dealing with her on April 21, 2006.[12]

Defendants submitted the affidavits of three LCS officers who witnessed the incident: Sgt. Alamanda Aceredo, Captain Ray Rider, and Lt. Crystal Head.[13] All of the officers state that Major Striedel handcuffed Bruce and that she was escorted to lockdown.

Defendants contend that Bruce did not complain that the handcuffs were too tight. Further, she waited almost two weeks before seeking medical treatment, and there is "no direct evidence that the handcuffing of Ms. Bruce by Michael Striedel on April 21, 2006 caused, contributed to or even aggravated this wrist condition in Ms. Bruce."[14]

---

[10] Id. at p. 127.

[11] Id. at Exhibit 5, p. 8.

[12] Id. at Exhibit 2.

[13] Id. at Exhibit 3.

[14] Rec. Doc. 38 at p. 7.

*Issue Presented*

Defendants contend they are entitled to summary judgment because Bruce's constitutionally-protected rights were not violated.

**FINDINGS AND CONCLUSIONS**

*Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56; Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir.1994)(*en banc*). An issue is material if its resolution could affect the outcome of the action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a fact issue has been created, the court must view the facts and the inferences in the light most favorable to the nonmoving party. Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir.1999).

The standard for summary judgment mirrors that for judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to evidence which is uncontradicted and unimpeached, regardless of which party it favors. Id. at 151, 120 S.Ct. 2097.

Where, as here, the non-moving party has the burden of proof at trial, the moving party may obtain summary judgment by demonstrating the absence of evidence supporting the

non-moving party's claim. Celotex Corp., 477 U.S. at 324. Once the movant produces such evidence, the burden shifts to the respondent to cite evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. Id. The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Little, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. FED.R.CIV.P. 56(C); Celotex Corp., 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. Id.

*Excessive Force Claim*

To state an Eighth Amendment excessive force claim, a plaintiff must allege that the force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and that he suffered an injury. *See* Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

"The use of ... handcuffs [is a] restraint commonly used on inmates, even those of a preferred status." Jackson v. Cain, 864 F.2d 1235, 1243 (5th Cir.1989). In Glenn v. City of Tyler, 242 F.3d 307, 311 (5th Cir. 2001), the plaintiff claimed that a police officer used excessive force in handcuffing him too tightly. The Fifth Circuit held:

> Other than placing the handcuffs on [plaintiff], according to [plaintiff's] own testimony, Officer Rhodes did not touch her. Therefore, her sole contention is that the officer put the handcuffs on her too tightly, causing her right wrist to swell. This court finds that handcuffing, without more, does not amount to excessive force. There is no allegation here that Officer Rhodes acted with malice.

Id. at 314.

Here, plaintiff alleges that Major Striedel's use of force was "malicious and sadistic and unnecessary."[15] Plaintiff stated that she was scared for her safety and that Major Striedel was visibly upset when he entered the room. A witness described Major Striedel as being in a "rage" when he approached and handcuffed plaintiff.[16]

Moreover, plaintiff alleges that Major Striedel put the handcuffs too tight and shoved her. Subsequently, she was treated for a right wrist injury and bruises were noted on her legs.

Although, defendants contend that Major Striedel did not put the handcuffs too tightly and that the causation of plaintiff's injuries are suspect, this simply contradicts plaintiff's evidence – it does not show that defendants are entitled to summary judgment.

Considering the contradictory contentions of the parties, plaintiff's submission of evidence of physical injury which is more than de minimis and which goes beyond "mere allegation," and viewing the facts and inferences in the light most favorable to the nonmoving party, Olabisiomotosho, *supra*, it is clear that there are genuine issues of material fact which prevent summary judgment, including: 1) whether Major Striedel placed the handcuffs on plaintiff too tightly; 2) whether Major Striedel acted with malice; and 3) causation of plaintiff's injuries.

### *Conclusion*

For the foregoing reasons, it is recommended that plaintiff's Motion for Partial Summary Judgment be denied.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

---

[15] Rec. Doc. 43, p. 1.

[16] Attachment to Rec. Doc. 43.

by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on August 13, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)